APPEAL: non-appealable order.

---

CHARLES J. ULRICI *et al.*, Plaintiffs-Appellants, v. HENRY A. BOECKELER, Executor of Estate of ADOLPHUS BOECKELER, Defendant-Appellant.

St. Louis Court of Appeals, January 4, 1898.

1. **Pledgee, Following Trust Money into Hands of:** DECLARATION OF TRUST: PROOF. Whenever a fiduciary relation, as pledgee or bailee is established, the modern rule of equity, as to following trust money, applies. *Bank v. Ins. Co.*, 104 U. S. 54; *Knatchball v. Hallett*, 13 Ch. Div. *loc. cit.* 710. But a trust can not be declared against money in the hands of a defendant executor, where the evidence fails to show that any part of it is trust money. *Phillips v. Overfield*, 100 Mo. 466.

2. ———: APPROPRIATION OF FUNDS OF ESTATE: INTEREST. A pledgee of the funds of an estate, who uses them in his private business, is chargeable in equity with the legal rate of interest from the date of the final settlement of the estate.

72  661
77  523
72  661
85  674

72  661
90  263

*Appeal from the St. Louis City Circuit Court.*—Hon. Selden P. Spencer, Judge.

Reversed and remanded; Judge Bland concurring, Judge Bond dissenting.

*Rudolph Schulenburg* for executor-appellant.

To bring this case within the scope of the doctrine announced in *Harrison v. Smith*, 83 Mo. 210, and subsequent decisions following it, it must be shown, by clear and unmistakable evidence, that a trust or the relation of trustee and *cestui que trust* existed, which has not been shown. *Woodford v. Stephens*, 51 Mo. 443; *Modrell v. Riddle*, 82 *Id.* 31; *Rogers v. Rogers*, 87 *Id.* 257; *Taylor v. Schrader*, 107 *Id.* 206; *Dailey v. Dailey*, 125 *Id.* 96.

The claims of all the plaintiffs, including Rudolph W. Ulrici, constitute ordinary demands against the estate of Adolphus Boeckeler, and the question of allowance of interest is covered by Revised Statutes 1889, section 5972, page 1428.

*William B. Thompson* for plaintiffs-appellants and respondent.

The receipt of the $2,000 by Adolphus Boeckeler, for the specific purpose of paying off the taxes, created a trust. There was at no time the relation of debtor and creditor. Story's Eq. Jur., sec. 964; *Mannix v. Purcell*, 46 Ohio St. 102; *Wallace v. Wainwright*, 87 Pa. St. 263; *Ahl's Appeal*, 25 W. N. C. (Pa.) 113; Willes on Trustees, 2; *Commissioners v. Walker*, 6 How. (Miss.) 143; 27 Am. and Eng. Ency. Law, p. 54; *Tyler v. Tyler*, 25 Brad. (Ill.) 339; 1 Perry on Trusts [4 Ed.], secs. 13, 86; Lewins Law Trusts

[9 Ed.], p. 12; Pom. Eq., sec. 1047; *Clark v. Bank*, 57 Mo. App. 277; *Huetleman v. Viesselmann*, 48 *Id.* 582.

The money in controversy went into the general assets of the estate of Adolphus Boeckeler, and became part thereof, and plaintiffs-appellants and respondent are entitled to a decree against all the assets of his estate in priority over his general creditors, for the amounts so received from them by him. *Stoller v. Coates*, 88 Mo. 514; *Harrison v. Smith*, 83 *Id.* 210; *Snodgrass v. Moore*, 30 Mo. App. 232; *Bank v. Sanford*, 62 *Id.* 394; *Cart Co. v. Stephens*, 32 *Id.* 341; *Hockensmith's Legatees v. Hockensmith's Ex'r*, 57 *Id.* 374; *Gamble v. Gibson*, 59 Mo. 585; *Brick Co. v. Schoeneich*, 65 Mo. App. 283.

"A trustee who has used trust money for his own purposes may be charged with the highest legal rate of interest." *In re Murdock & Dickson*, 129 Mo. 499; *Cruce v. Cruce*, 81 Mo. 676; *In re Davis*, 62 *Id.* 450; *Williams v. Heirs*, *Id.* 460; *Frost v. Winston*, 32 Mo. 489; *Scott v. Crews*, 72 *Id.* 261; *Camp's Creditors v. Camp's Adm'r*, 74 *Id.* 192.

BIGGS, J.—The plaintiff, Charles J. Ulrici and Maria Sophia Bergling, Clara E. Wolf, deceased, and Rudolph W. Ulrici, were the residuary legatees under the will of Richard W. Ulrici. Adolphus Boeckeler, deceased, was named in the will as executor, and he was also appointed trustee of the share of Rudolph W. Ulrici. After the death of Adolphus, the plaintiff, W. B. Thompson was appointed in his stead as such trustee. The executors of the estate of Clara E. Wolf are also party plaintiffs. The plaintiff Eilse Boeckeler owns the share of Mrs. Bergling. That clause of the will which is pertinent reads:

"ITEM H.

" * * * After the sale of all my personal estate, and the payment of all the bequests of my will, I hereby give and bequeath all the rest and residue of my personal estate to the following named persons, share and share alike, to wit: To my sister, Maria Sophia Bergling, or in case of her death to her heirs at law; to my sister, Clara Wolf, or in case of her death to her heirs at law; to Adolphus Boeckeler, as trustee, in trust for my brother, Rudolph, to be paid to him as my trustee shall see fit and proper, in the same manner and with like effect as provided herein for the trusts and other estate held by said trustee for the use and benefit of said Rudolph W. Ulrici, and in case of the death of said Rudolph W. Ulrici, to his heirs at law; to Charles Ulrici, son of my brother, Robert, in the Island of Cuba, or in case of his death before the probate of my will, to his heirs at law." * * *

In October, 1888, Boeckeler made a final settlement of the estate. The settlement showed a balance of $9,381.36 due each one of the residuary legatees. At the time the final settlement was presented, there was a controversy between the executor and third parties, who were devisees under the will, as to the liability of the former for the payment of certain taxes which had been assessed against the real estate devised to the latter. The executor was not willing to make the distribution, unless he was indemnified against this contingent liability. In order that the settlement might be made, it was agreed between the executor and the residuary legatees that receipts in full should be given for the distributive shares, but out of each share the executor was to retain the sum of $500 as an indemnity, and when the tax matter was determined or settled, he was to pay over to the parties the respective

amounts due them, or so much thereof as remained in his hands after satisfying any liability for the taxes aforesaid. This arrangement was carried out. Boeckeler, as trustee, gave a receipt to himself as executor for the share of Richard W. The settlement was thereupon approved and the executor discharged. A few months afterward the devisees paid the taxes.

During the administration a boy was hurt upon premises belonging to the estate. Subsequent to the settlement and before the payment of the taxes, the boy brought suit against Boeckeler, alleging that at the time he received the injuries the premises were out of repair, and that they were then under the control of the executor. When the legatees demanded the payment of the amounts retained by Boeckeler, an additional agreement was entered into in respect of the fund, to the effect that Boeckeler should retain the money to indemnify him against the results of the suit of the boy. He finally defeated the action, but in doing so was compelled to expend $750 in counsel fees and other necessary expenses. He died on the twenty-seventh day of October, 1894. The aforesaid obligations due plaintiffs are unpaid. Concerning the foregoing facts, there is no reasonable grounds of dispute.

It is claimed by the plaintiffs that in equity and good conscience a resulting trust ought to be declared in their favor against the assets of the estate of Boeckeler. For the purpose of securing this relief they instituted this action in equity against the executor of the estate of Boeckeler, and they ask that in the payment of claims the executor be ordered to pay their claims in preference to those of the general creditors of the estate. The grounds of the alleged equity are, that Boeckeler held the money as trustee for plaintiffs, and that a portion of the money then in the hands of

the executor of Boeckeler belongs to the trust fund, which entitles plaintiffs to priority in the payment of their claims. The decree in the circuit court was in favor of Thompson as trustee for the amount of his claim with interest from October, 1888, at the rate of six per cent per annum. The defendant was ordered to pay this judgment as a preferred demand. Judgments were rendered for the balance due the other claimants with interest from the date of the institution of the suit, but the court decided that these judgments were not entitled to priority. All of the parties except Thompson have appealed.

The only complaint made by the defendant pertains to that portion of the decree in favor of Thompson. His counsel urges that the decree is erroneous as to the claim of Thompson, for the reasons, *first*, that as to the $500, the relation of trustee and *cestui que trust* did not exist between Boeckeler and Rudolph W. Ulrici; and *secondly*, that if the relationship did exist a trust could not be declared against the money in the hands of the defendant executor, for the reason that the evidence failed to show that any portion of it was trust money or was the proceeds of property which had been purchased with trust money.

PLEDGEE, following trust money into hands of: declaration of trust: proof.

We think that counsel is in error as to the first proposition. It is clear that the technical relation of trustor and trustee existed between Rudolph and Boeckeler. That relationship was created by the will. The arrangement by which Boeckeler was to retain the money can not be construed as a payment to Rudolph. Besides, the question is an immaterial one. Taking a view most favorable to defendant, Boeckeler certainly held the balance of the money in a fiduciary capacity, that is, as pledgee or bailee. It is now well settled that whenever a fiduciary relationship is established, the

modern rule of equity as to following trust money is applicable. *Bank v. Ins. Co.*, 104 U. S. 54; *Knatchball v. Hallett*, 13 Ch. Div. *loc. cit.* 710. Concerning the second proposition, the evidence introduced by plaintiffs tended to show that Boeckeler stated that he had deposited the $2,000 retained by him in Boatmen's Savings Bank. His bank book was read in evidence which showed that on the twenty-fifth day of January, 1889, he as trustee made a deposit of $1,779.35; that he continued to make monthly deposits to the credit of this account up to the time of his death; that during the time he checked against it for his individual use, and that at his death there was a balance of $69.60 due him on the account. After his death the bank paid the balance to Thompson as trustee. The earlier cases hold that where trust money has been mixed with other money, a court of equity was powerless to follow it, for the reason that the means of identification are gone. This is what is known as the "ear mark" doctrine. The modern decisions have cut loose from the rule and declare that whenever it is shown that particular funds or the *existing* assets of an insolvent estate have been increased by trust money, a court of equity will, to the extent of the money so added, declare a trust or priority in favor of a *cestui que trust* or other beneficiary. Our supreme court for the first time adopted the modern rule in the case of *Harrison v. Smith*, 83 Mo. 210. It was reaffirmed in *Stoller v. Coates*, 88 Mo. 515, and applied by us in the cases of *Bank v. Sanford*, 62 Mo. App. 394, and *Brick Company v. Schoeneick*, 65 Mo. App. 283. An examination into the facts of the foregoing cases will show that there was evidence authorizing the inference that the trust money or the proceeds of trust property had been intermingled with the existing assets. Thus in the *Harrison* case there was evidence that the wrongful mixing of the trust money

took place a few days before the bank made an assign-
ment.    In the *Stoller* case the funds were intermingled
the day before the failure of the bank.    The *Sanford*
case presented a similar state of facts.    In *Brick Com-
pany v. Shoeneick*, the secretary of the plaintiff continued
to make deposits of plaintiff's money to the credit of
the milling company up to the date of the failure of
the latter company.

In the later case of *Phillips v. Overfield,* 100 Mo.
466, the application of the rule was denied.    In that
case it appeared that Amos R. Phillips had adminis-
tered on the estate of Shapley R. Phillips, deceased.
Ten years after he took out letters Amos R. died
leaving the estate of Shapley Phillips unsettled.    His
(Amos) estate proved to be insolvent, the indebtedness
of which amounted to over $100,000.    About one half
of the amount was due the estate of Shapley R.    The
heirs of that estate brought suit, in which they under-
took to impress all of the assets of the estate of Amos R.
with a trust in their favor, thereby attempting to secure
the payment of the indebtedness due the estate in prefer-
ence to other debts.    The only evidence relied on by the
petitioners was that at the commencement of the ad-
ministration Amos R. had but little property.    The
supreme court held this showing to be too indefinite
and observed that it was "just as fair to say that the
property which he (Amos) owned at his death is the
product of money and property received from the de-
fendant creditors, as it is to say it is the product of the
assets of his father's estate."    So in the case at bar it
can not be said that any portion of the money in the
hands of the defendant is trust money.    The evidence
shows the contrary.    Conceding that the first deposit
in January, 1889, was set apart by Boeckeler for the
benefit of plaintiffs, the bank book and oral evidence
conclusively show that long prior to the death of

Boeckeler the entire original deposit was used by him in his individual business. These facts bring the case clearly within the ruling in the *Phillips* case.

It follows that so much of the decree as establishes priority in the payment of the claim in favor of Thompson must be set aside, as the evidence in support of it is too indefinite. On a retrial the plaintiffs may be able to identify the trust funds as part of the property in the hands of the deceased at the time of his death.

The plaintiffs (appellants) claim that the circuit court committed error in refusing to declare a preference of their claims, and that the court also committed error in refusing to allow interest on their

PLEDGEE: appropriation of funds of estate: interest.

demands. The first contention has been disposed of. The second is well taken.

As herein stated, Boeckeler held the $2,000 in a fiduciary capacity. As to the shares of these plaintiffs his position was that of pledgee. Instead of preserving the fund in tact, he used it in his private business. In equity he is chargeable with the legal rate of interest from the date of the final settlement of the estate of Richard W. Ulrici. In this respect the decree of the circuit court is likewise erroneous. The decree will therefore be set aside and the cause remanded. Judge BLAND concurs; Judge BOND dissents. He thinks the judgment of priority in favor of Thompson, the trustee, should be affirmed.